IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**SONYA OWENS**
1325 Ingraham Street, NW
Washington, D.C.   20011

      Plaintiff,

v.

**DISTRICT OF COLUMBIA,**
a municipal corporation,
Office of Corporation Counsel
441 4th Street, N.W.
Washington, D.C.   20001

**Office of CORPORATION COUNSEL**
of the Government District of Columbia
441 4th Street, N.W.
Washington, D.C.   20001

and

**Anthony A. WILLIAMS**
(In his Official Capacity)
Mayor of the District of Columbia
1350 Pennsylvania Avenue, NW
Washington, D.C.   20004

      Defendants.

**Jury Demand**

## COMPLAINT

COMES NOW the Plaintiff, Sonya Owens, by and through her counsel, The Law Office of Jimmy A. Bell, P.C. and Jimmy A. Bell, Esquire, and respectfully presents this complaint against the Defendant, The District of Columbia, to enforce her rights under 42 U.S.C. § 1981 and District of Columbia Human Rights Act §§ 2-1402.11 and 2-1402.61.

**JURISDICTION**

1. Plaintiff Sonya Owens alleges a cause of action, in part, arising under 42 U.S.C. § 1981. As this constitutes a civil action arising under the laws of the United States, federal jurisdiction is proper under 28 U.S.C. § 1331.

**VENUE**

2. Venue is proper in the District of Columbia as the Defendant is the Government of the District of Columbia, Defendant conducts business within the District of Columbia, and the acts complained of occurred within the said jurisdiction.

**STATEMENT OF FACTS**

3. Plaintiff Sonya Owens ("Plaintiff Owens") is a citizen of the District of Columbia.

4. During all times mentioned in the following complaint, Plaintiff Sonya Owens held the rank of Captain with the District of Columbia Metropolitan Police Department ("MPD").

5. During all times mentioned in the following complaint, MPD was an agency of Defendant District of Columbia.

6. In June 2001, Plaintiff Sonya Owens was interviewed by the Equal Employment Opportunity Commission ("EEOC") as a witness during the investigation of the complaints of Officers Sharon Ritchie ("Ritchie") and Tracie Jones ("Jones") that alleged, among other things, gender and pregnancy discrimination against Commander Willie Dandridge

2

("Dandridge") of the Sixth District, who is currently the Assistant Chief of Police.

7. During the course of the investigation described in paragraph 6, Plaintiff Owens stated that Ritchie and Jones had received disparate inequitable treatment, including, but not limited to violations of Department policies.

8. During the course of the investigation described in paragraph 6, it was alleged that medical paperwork submitted by Ritchie and Jones had been "misplaced" by Sixth District Administrative Staff.

9. During the course of the investigation described in paragraph 6, Plaintiff Owens personally informed MPD Chief Charles Ramsey that the medical paperwork described in paragraph 8 by the officers was personally and properly submitted by Plaintiff Owens and that no one at the Sixth District had informed her that they had not received copies.

10. Subsequently, Officer Lovell ("Lovell"), who was an acting Sergeant at the time, admitted that he removed the paperwork described in paragraph 8 from the MPD Administrative Section and admitted that he had informed Dandridge that Owens had not submitted the paperwork.

11. Upon information and belief, Lovell also forged documents in support of his false claims.

12. Lovell was subsequently promoted to sergeant and assigned a premium position.

3

13. Following Plaintiff Owens' participation in the EEOC investigation described in paragraph 6, Dandridge informed Plaintiff Owens that he did not consider her a "team player."

14. Following Plaintiff Owens' participation in the EEOC investigation described in paragraph 6, Plaintiff Owens found that her routine paperwork that had been accepted previously was often rejected for being "unacceptable."

15. Following Plaintiff Owens' participation in the EEOC investigation described in paragraph 6, she was removed from conducting Commanders' conferences.

16. Following Plaintiff Owens' participation in the EEOC investigation described in paragraph 6, she was no longer permitted to acquire a "take home vehicle."

17. In September 2001, Plaintiff Owens was abruptly transferred from the Sixth District to the Fifth District, despite telling Dandridge that she did not want to be transferred.

18. Prior to her transfer described in paragraph 17, all three (3) of Plaintiff Owens' Patrol Service Areas ("PSAs")in the Sixth District had crime reductions.

19. Prior to her transfer described in paragraph 17, Plaintiff Owens had helped re-establish Sixth District Neighborhood Watch Program.

4

20. Prior to her transfer described in paragraph 17, Plaintiff Owens developed and ran one of the most successful Vehicle Take Home programs in the MPD.

21. Prior to her transfer described in paragraph 17, Plaintiff Owens was in charge of numerous successful programs in the Sixth District including, but not limited to, the Power Shift, the Sixth District station, the Sixth District Missing Persons Unit, the Sixth District Mountain Bike Officer Program, the Sixth District Warrant Squad, and, the Sixth District Detectives.

22. Plaintiff Owens was removed from her supervisory role of the Sixth District Detectives after she found out that one detective had not closed a case in 3 years and she attempted to raise case closure rate from 10% to 60%.

23. In June 2002, Plaintiff Owens was contacted by the MPD and was informed that a Federal Court Order had been issued for her to be deposed that day at a deposition hearing for Ritchie regarding her lawsuit against the MPD.

24. Plaintiff Owens had not been served with the subpoena issued for the deposition described in paragraph 23.

25. Upon information and belief, a process server had attempted to serve a subpoena on Plaintiff Owens for the matter described in paragraph 23.

26. Upon information and belief, the MPD typically makes its officers available to process servers for service of subpoenas.

27. Upon information and belief, MPD typically allows its officers at least two (2) weeks to mentally prepare for giving testimony and depositions.

28. After appearing at the deposition described in paragraph 23, MPD informed Plaintiff Owens that it had been unable to locate her to allow proper service, notwithstanding the fact that she had been on her scheduled shift in for the prior few weeks.

29. In September 2002, following her testimony against MPD and Dandridge, Plaintiff Owens received an "average" performance rating from Dandridge that adversely affected her application to attend the FBI National Academy, for which MPD required an "above average" minimum performance rating.

30. During the evaluation period prior to her "average" performance rating described in paragraph 29, Plaintiff Owens was successfully managing three (3) PSAs.

31. In October 2002, following her testimony against MPD and Dandridge, Plaintiff's superior, Commander Greene ("Greene"), stated that Plaintiff Owens was attending too much outside training.

32. At the time of Greene's statement described in paragraph 31, the only outside training Plaintiff Owens was participating in was the Executive School Resource Officer training provided by the National Center for Missing and Exploited Children.

33. Subsequent to Greene's statement described in paragraph 31, Plaintiff was required to personally request and receive approval from Greene for outside training.

34. Upon information and belief, no officer other than Plaintiff Owens was required to follow the procedures described in paragraph 33 in order to attend outside training.

35. In August 2003, Plaintiff Owens submitted an application for the Certified Public Manager's ("CPM") Program Cohort 17 to Greene.

36. In September 2003, Plaintiff Owens contacted the Center for Workforce Development ("CWD") and found that they had not received her application from Greene.

37. Subsequent to discovering that CWD had not received her application, Plaintiff Owens re-submitted her application to Greene.

38. In October 2003, Plaintiff Owens again re-submitted her application and the accompanying Commander's Worksheet to Greene and also hand-delivered her portion of the application directly to CWD.

39. In October 2003, Greene contacted Plaintiff Owens while Plaintiff Owens was attending class at University of Maryland at College Park and stated that she needed her to report to work right away.

40. In addition to the demand described in paragraph 39, Greene stated that Plaintiff Owens was required to work the day work tour and that matters at the Fifth District were her "first priority."

41. As a direct result of this order, Plaintiff Owens was prevented from attending college classes for the semester.

42. Subsequently, Plaintiff Owens had to submit a request to Greene for approval to attend college classes.

43. In January 2004, Plaintiff Owens attended a Resolution Hearing regarding adverse action against her for failing to submit some administrative paperwork.

44. During the course of these administrative investigations, Plaintiff Owens pointed out that her paperwork was late because Greene and Assistant Chief Brian Jordan ("Jordan") reviewed the investigations late and/or constantly rejected them for minor mistakes and/or for arbitrary reasons.

45. During the course of the investigations described in paragraph 44, Plaintiff Owens saw no evidence against her or paperwork other than the resolution worksheet that stated she would receive a 10-day suspension.

46. Plaintiff was suspended for 10 days as a result of the investigation described in paragraph 44.

47. In May 2004, Plaintiff Owens was notified of her acceptance into the CPM program by the CWD.

48. In October 2003, Plaintiff Owens received her FY2004 Performance Evaluation Contract ("FY2004") which was subsequently accepted by the MPD.

49. Although Plaintiff Owens' FY2004 was not expired at the time, in July 2004 Plaintiff Owens received an amended version of her FY2004, which

8

changed, amongst other things, her "individual performance" requirements such as the crime reduction percentage goals, her Individual Development Plan goals, omitted her intention to participate in the CPM program, and required that Plaintiff Owens work to develop a partnership program with area ministers that would allow them to enter crime scenes to counsel victims without being requested to do so.

50. Plaintiff Owens refused to sign her amended FY2004.

51. Upon information and belief, no officer other than Plaintiff Owens received an amended FY2004 insofar that altered the "individual performance plan."

52. In August 2004, Ms. Owens was notified by Mr. Erol Arthur ("Arthur") that she had been removed from the CPM program because the MPD failed to submit its portion of her application package.

53. Prior to her removal from the CPM program, Plaintiff Owens had been interviewed, accepted, attended classes, taken class pictures, and received study materials.

54. Upon being questioned, Greene denied ever receiving the application until Plaintiff Owens told her that Mr. Arthur had personally delivered another copy to her in June 2004 and that it had been received by Captain Scott, who in turn stated that he placed it in her hands.

55. Subsequently Greene admitted that she did not forward Plaintiff Owens' application for the CPM program because Greene did not think Plaintiff Owens deserved to attend the program.

9

56. On August 14, 2004, the Fifth District Time and Attendance clerks stated that Greene ordered them to change Plaintiff Owens' pay status to Absent Without Leave ("AWOL") for the week of CPM training that she received.

57. When Plaintiff Owens filed a grievance regarding her pay status described in paragraph 56, no action was taken.

58. Despite Greene's admission in paragraph 55, A/C Shannon Cockett stated that there were no repercussions when the Command Staff refused to follow policy or protocols.

59. In September 2004, Plaintiff Owens received an "average" rating from Greene, who justified this rating by stating there was a "stack" of complaints against Plaintiff.

60. Plaintiff Owens requested that Greene submit the complaints described in paragraph 59 so that she would be given the opportunity to address them.

61. Among other things, the complaints described in paragraph 58 included a complaint about a poor presentation by someone other than Plaintiff Owens, at a meeting hosted by someone other than Plaintiff Owens.

62. In January 2005, Plaintiff Owens was served with a notice of proposed suspension for 15 days, plus an additional 5 days, for "overdue correspondence," which she appealed.

63. In February 2005, Plaintiff Owens was contacted by the MPD and was informed that a Federal Court Order had been issued for her to testify that day in court regarding Ritchie's lawsuit against the MPD.

64. Plaintiff Owens had not been served with a subpoena for the matter described in paragraph 63.

65. Upon information and belief, a process server had attempted to serve a subpoena on Plaintiff Owens for the matter described in paragraph 63.

66. Upon information and belief, the MPD typically makes its officers available to process servers for service of subpoenas.

67. Upon information and belief, MPD typically allows at least two (2) weeks to mentally prepare for giving testimony and depositions.

68. After appearing as a witness in the matter described in paragraph 63, MPD informed Plaintiff Owens that it had been unable to locate her to allow proper service, notwithstanding the fact that she had been on her scheduled shift in for the prior few weeks.

69. In March 2005, Internal Affairs ("IA") contacted Plaintiff Owens regarding a complaint from the Arlington Animal Shelter ("AAS").

70. During the recorded and confidential interview in the matter described in paragraph 69, IA and MPD refused to tell Plaintiff Owens about the nature of the complaint, the underlying allegations of misconduct, or the charges presented to the US Department of Justice that resulted in a letter of declination.

71. Subsequently and upon further questioning, IA and MPD admitted that they were not familiar with the specific allegations of misconduct.

72. At the conclusion of the interview described in paragraph 70 and after the audio recorder was stopped, IA and MPD informed Plaintiff Owens that

she was forbidden to return to AAS and that if she did, she would be arrested.

73. Subsequent to her investigation described in paragraphs 69-72, MPD revoked all of Plaintiff Owens' official duties.

74. On March 9, 2005 Greene served Plaintiff Owens with a written order that directed her to return to the Office of Professional Responsibility ("OPR") on March 11, 2005 and provide answers to three (3) specific questions from the interview described in paragraph 70.

75. Upon information and belief, OPR violated its confidentiality policy and bypassed its entire chain-of-command to tell Greene, a witness in this investigation, the contents of her interview.

76. Plaintiff Owens informed Greene in writing about this suspected breach and also hand-delivered a copy of this document to the investigating agent on the day of that interview.

77. Plaintiff also requested eight (8) hours of leave in order to obtain legal advice regarding the interview described in paragraph 74.

78. Plaintiff sought out legal advice regarding the interview described in paragraph 74.

79. Greene denied Plaintiff Owens' request for legal counsel described in paragraph 77.

80. Thereafter, OPR ordered Plaintiff Owens to go their office to be interviewed.

81. Upon information and belief, OPR's activity described in paragraph 80 was conducted on behalf of Greene.

82. Following the OPR interviews described in paragraphs 70 and 80, Plaintiff Owens requested copies of the audio-taped interviews.

83. Plaintiff Owens has never received copies of the audio-taped interviews.

84. On March 12, 2005, Greene demanded a statement regarding her eight (8) hour AWOL status on the previous day.

85. In response to Greene's request, described in paragraph 84, Plaintiff Owens informed Greene that she had requested eight (8) hours of leave to seek legal advice and, regardless that Plaintiff Owens was entitled to two (2) hours of overtime as "call back" for being at OPR during off-duty hours.

86. Notwithstanding the information described in paragraph 85, Greene informed Plaintiff Owens that she would be listed as eight (8) hours AWOL.

87. On March 13-26, 2005, Plaintiff Owens served her suspension based on facts and circumstances described in paragraph 62.

88. On March 16, 2005, Plaintiff Owens filed an appeal for her suspension described in paragraph 87 with Office of Employee Appeals ("OEA").

89. On March 29, 2005, Plaintiff Owens returned to work and Greene gave her a copy of her email message from Inspector Klein, directing her to report to OPR forty-five (45) minutes later.

90. Before Plaintiff Owens' arrival at OPR, Greene attempted to conduct a Resolution Hearing on a pending adverse action.

91. After meeting with OPR, Plaintiff Owens requested that Greene forward the investigation to the appropriate department because Plaintiff Owens was unwilling to negotiate terms at that juncture.

92. Greene then handed Plaintiff Owens a leave slip for eighty (80) hours annual leave to be applied during the period that she served her suspension.

93. Plaintiff Owens refused to sign the slip described in paragraph 92.

94. Greene stated that she would instead charge Plaintiff Owens with AWOL because she was not served a PD77 Revocation of Police Powers form ("PD77"), notwithstanding the fact that Greene had told Plaintiff Owens that the suspension was directed by the Chief and that a PD77 was not necessary.

95. In addition, Plaintiff stated that her police powers had been revoked anyway, as described in paragraph 73.

96. Upon information and belief, MPD policy does not require the service of a PD77 to facilitate a suspension of a member whose police powers were already revoked and not restored.

97. In April 2005, Plaintiff Owens was charged with eighty (80) hours of AWOL and suspended again for ten (10) days.

98. Plaintiff Owens submitted a supplement to her appeal with OEA, described in paragraph 88, to include the matter described in paragraph 98.

99. In May 2005, Plaintiff Owens was served with a proposed notice of termination regarding the AAS complaint described in paragraph 69, eight (8) hours AWOL on March 11, 2005 described in paragraph 86, and eighty (80) hours AWOL for March 13-26, 2005, described in paragraph 97.

100. Plaintiff Owens requested a hearing and requested additional missing information including, but not limited to audio-taped interviews, statements from all witnesses, missing attachments, from MPD.

101. In addition to her correspondence, Councilmember Fenty, Plaintiff Owens' former attorney, and the DC Attorney General's Office, all forwarded her request to MPD.

102. Plaintiff did not receive any of the requested information and/or documents described in paragraph 100.

## COUNT I

### UNLAWFUL RETALIATION IN VIOLATION OF 42 U.S.C. § 1981

103. Plaintiff re-pleads and re-alleges, with the same force and effect as if set forth separately and at length herein, paragraphs 1 – 102.

104. Plaintiff took part in a protected activity (testifying in an EEOC hearing, being deposed as a witness in an action against MPD, giving testimony at trial in an action against MPD).

105. Plaintiff suffered an unlawful retaliatory practice when Defendant threatened, retaliated, attempted to coerce and/or interfered with Plaintiff in the exercise or enjoyment of, or on account of having exercised or

15

enjoyed, or on account of having aided or encouraged any other person in the exercise or enjoyment of any right granted or protected by 42 U.S.C. § 1981.

106. Defendant intentionally retaliated against Plaintiff Sonya Owens in violation of the 42 U.S.C. § 1981 on account of her engagement in participation in activity protected by 42 U.S.C. § 1981 (testifying in an EEOC hearing, being deposed as a witness in an action against MPD, giving testimony at trial in an action against MPD).

## COUNT II

### UNLAWFUL DISCRIMINATION IN VIOLATION OF THE DISTRICT OF COLUMBIA HUMAN RIGHTS ACT § 2-1402.11

107. Plaintiff re-pleads and re-alleges, with the same force and effect as if set forth separately and at length herein, paragraphs 1 – 106.

108. Plaintiff is a member of a protected class based on her race (black).

109. Plaintiff suffered an unlawful, discriminatory, and adverse change in employment with respect to her terms, conditions, or privileges of employment, including promotion based on her membership in a protected class, namely her race (black).

110. Plaintiff suffered an unlawful, discriminatory, and adverse employment action, change, limitation and/or classification that deprived and/or tended to deprive Plaintiff of employment opportunities and otherwise adversely affect her status as an employee and/or privileges of employment based on her membership in a protected class, namely her race (black).

111. Plaintiff suffered adverse employment action(s).

112. Defendant intentionally discriminated against Plaintiff Sonya Owens in violation of the District of Columbia Human Rights Act § 2-1402.11 on account of her race (black).

### COUNT III

### UNLAWFUL DISCRIMINATION IN VIOLATION OF THE DISTRICT OF COLUMBIA HUMAN RIGHTS ACT § 2-1402.11

113. Plaintiff re-pleads and re-alleges, with the same force and effect as if set forth separately and at length herein, paragraphs 1 – 112.

114. Plaintiff is a member of a protected class based on her sex (female).

115. Plaintiff suffered an unlawful, discriminatory, and adverse change in employment with respect to her terms, conditions, or privileges of employment, including promotion based on her membership in a protected class, namely her sex (female).

116. Plaintiff suffered an unlawful, discriminatory, and adverse employment action, change, limitation and/or classification that deprived and/or tended to deprive Plaintiff of employment opportunities and otherwise adversely affect her status as an employee and/or privileges of employment based on her membership in a protected class, namely her sex (female).

117. Plaintiff suffered adverse employment action(s).

118. Defendant intentionally discriminated against Plaintiff Sonya Owens in violation of the District of Columbia Human Rights Act § 2-1402.11 on account of her sex (female).

## COUNT IV

### UNLAWFUL RETALIATION IN VIOLATION OF THE DISTRICT OF COLUMBIA HUMAN RIGHTS ACT § 2-1402.61(a)

119. Plaintiff re-pleads and re-alleges, with the same force and effect as if set forth separately and at length herein, paragraphs 1 – 118.

120. Plaintiff participated in a protected activity (testifying in an EEOC hearing, being deposed as a witness in an action against MPD, giving testimony at trial in an action against MPD).

121. Plaintiff suffered an unlawful discriminatory practice when Defendant threatened, retaliated, attempted to coerce and/or interfered with Plaintiff in the exercise or enjoyment of, or on account of having exercised or enjoyed, or on account of having aided or encouraged any other person in the exercise or enjoyment of any right granted or protected under the District of Columbia Human Rights Act § 2-1401.11.

122. Defendant intentionally retaliated against Plaintiff Sonya Owens in violation of the District of Columbia Human Rights Act § 2-1402.61 on account of her engagement in participation in activity protected by District of Columbia Human Rights Act § 2-1402.11 (testifying in an EEOC hearing, being deposed as a witness in an action against MPD, giving testimony at trial in an action against MPD).

**COUNT V**

**UNLAWFUL INTERFERENCE WITH COMPLIANCE
WITH THE DISTRICT OF COLUMBIA HUMAN
RIGHTS ACT § 2-1402.11 IN VIOLATION
OF THE DISTRICT OF COLUMBIA HUMAN
RIGHTS ACT § 2-1402.61(c)**

123. Plaintiff re-pleads and re-alleges, with the same force and effect as if set forth separately and at length herein, paragraphs 1 – 122.

124. Plaintiff attempted to act in compliance with under the District of Columbia Human Rights Act § 2-1401.11 activity (being deposed as a witness in an action against MPD and giving testimony at trial in an action against MPD).

125. Plaintiff suffered an unlawful obstruction and/or prevention of compliance with the District of Columbia Human Rights Act § 2-1401.11 when Defendant caused or coerced, or attempt to cause or coerce, directly or indirectly, the prevention of Plaintiff of complying with the provisions under the District of Columbia Human Rights Act § 2-1401.11 (failure to properly notify or allow the notification of Plaintiff of upcoming testimonial obligations).

126. Defendant illegally violated Plaintiff Sonya Owens' Human Rights in violation of the District of Columbia Human Rights Act § 2-1402.61 by burdening and/or obstructing her participation in activity protected by District of Columbia Human Rights Act § 2-1402.11 (being deposed as a witness in an action against MPD and giving testimony at trial in an action against MPD for unlawful discrimination).

## RELIEF SOUGHT

127. Plaintiff re-pleads and re-alleges, with the same force and effect as if set forth separately and at length herein, paragraphs 1 – 126.

128. Plaintiff Sonya Owens requests the following relief:

129. Compensatory and punitive damages in the amount of $5,000,000.00.

130. Pre- and post-judgment interest.

131. The costs of litigation, including reasonable attorney's fees and expert witness fees.

132. Such other relief that may be just.

## JURY DEMAND

133. Plaintiff Sonya Owens demands a trial by jury.


Respectfully submitted,

_____
Jimmy A. Bell, Esq.
The Law Office of Jimmy A. Bell, P.C.
9610 Marlboro Pike
Upper Marlboro, MD   20772
(301) 599-7620
(301) 599-7623 (Fax)
Bar No. MD 14639