UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SONYA OWENS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) CV-05-1729 (AK) |
| DISTRICT OF COLUMBIA, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**DEFENDANT'S MOTION TO DISMISS BASED ON PLAINTIFF'S PRETRIAL STATEMENT**

Defendant District of Columbia (the "Defendant"), by and through undersigned counsel and pursuant to Fed. R. Civ. P. 16(c)(1), 12(b)(6), and LCvR 16.5(b) hereby moves this Court for an order dismissing certain of Sonya Owens' (hereinafter "Plaintiff") claims based on her pre-trial statement. In support of this motion the Defendant states:

(1) Plaintiff has failed to allege that a custom or policy was the moving force that caused the alleged violation of her rights under 42 U.S.C. § 1981 and, therefore, Count I should be dismissed.

(2) Plaintiff's 42 U.S.C. § 1981 claim is also time barred as it pertains to acts occurring prior to August 31, 2002 because Plaintiff failed to assert her claim within the three year statute of limitation required by 42 U.S.C. § 1981;

(3) Plaintiff's Human Rights Act claims are time barred as they pertain to acts occurring prior to August 31, 2004 because Plaintiff failed to assert the claims within the one year statute of limitation required by the DCHRA; and

(4) Plaintiffs Human Rights Act claims are barred as they pertain to acts occurring prior to February 12, 2005 because Plaintiff failed to comply with the mandatory notice provision of D.C. Code § 12-309.

In support of this motion, a memorandum of points and authorities is attached.

Respectfully submitted,

LINDA SINGER
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General,
Civil Litigation Division

    */s/Phillip A. Lattimore*
PHILLIP A. LATTIMORE, III [422968]
Chief, General Litigation Sec. III

    */s/Nicola N. Grey*
NICOLA N. GREY [492150]
Assistant Attorney General
441 Fourth Street, N.W.
Sixth Floor South
Washington, D.C. 20001
(202) 724-6626; (202) 727-6295
(202) 727-3625 (fax)
E-mail: nicola.grey@dc.gov

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SONYA OWENS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>DISTRICT OF COLUMBIA, )<br>)<br>Defendant. )<br>_____) | CV-05-1729 (AK) |

## DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS BASED ON PLAINTIFF'S PRETRIAL STATEMENT

Defendant District of Columbia (the "Defendant"), by and through undersigned counsel, submits this Memorandum of Points and Authorities in support of its Motion.

### Statement of the Case

This case arises out of the termination of Sonya Owens (hereinafter "Plaintiff") from her position as captain with the District of Columbia's Metropolitan Police Department ("DCMPD").[1] On September 24, 2007, Plaintiff filed her Pretrial Statement ("PS") in which Plaintiff claims that she was discriminated against by Defendant because of her race and sex in violation of 42 U.S.C. § 1981 and the District of Columbia Human Rights Act ("DCHRA"). *See* PS. p. 1. Plaintiff, however, does not allege specific dates and incidents in which she was discriminated on the basis of her race and gender. *See* PS; Complaint. Plaintiff also claims that she was retaliated against. *See Id.* Plaintiff claims that she was retaliated against after testifying in an Equal Employment Opportunity Commission hearing in June of 2001, being deposed as a

---

[1] DCMPD served Plaintiff with a proposed notice of termination on May 3, 2005. She was served with a final notice of termination on October 13, 2005 which became effective on November 25, 2005.

3

witness in an action against DCMPD in June of 2002, and giving testimony at trial in the same action against DCMPD in February of 2005. Complaint at ¶¶ 2, 5, 10, 15.

For the reasons set forth below, Plaintiff's claims must be dismissed.

## STANDARD OF REVIEW

Under the Federal Rules of Civil Procedure, the primary purpose of pretrial procedure is to define the issues for trial. *E.g., Meadow Gold Products Co. v. Wright*, 278 F.2d 867, 869 (D.C. Cir. 1960); *Gomez v. Trustees of Harvard University*, 676 F. Supp. 13, 15 (D.D.C. 1987). Fed. R. Civ. Pro. 16(c)(1) allows the court to take appropriate action to formulate and simplify trial issues, "including the elimination of frivolous claims." This rule is intended to promote efficiency and conserve judicial resources by identifying the real issues for trial. Fed. R. Civ. Pro. 16 advisory committee note (1983); *Hodges v. United States*, 597 F. 2d 1014, 1017 (5th Cir. 1979); *Owen v. Schultz*, 177 F.2d 641, (D.C. Cir. 1949). Under the rule, the court may summarily dispose of claims that fail to present a genuine issue of fact. *See Diaz v. Schwerman Trucking Co.*, 709 F.2d 1371, 1375 n.6 (11th Cir. 1983). The standard for eliminating a claim pursuant to Fed. R. Civ. Pro. 16(c)(1) is similar to the standard for granting summary judgment pursuant to Fed. R. Civ. Pro. 56. *See Portsmouth Square, Inc. v. Shareholders Protective Comm.*, 770 F.2d 866, 869 (9th Cir. 1985).

For many years, the oft-cited standard of review in determining the sufficiency of a complaint when faced with a motion to dismiss was that set forth by the Supreme Court in *Conley v. Gibson*: "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. 41, 45-46 (1957).

4

However, in the recent Supreme Court case of *Bell Atlantic Corp. v. Twombley,* 127 S. Ct. 1955 (2007), the Court re-examined *Conley*, observing that "*Conley's* 'no set of facts' language has been questioned, criticized, and explained away long enough." *Bell Atlantic*, 127 S. Ct. at 1969. The Court concluded that "[t]he phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Conley,* then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Id.* (citations omitted).

The Supreme Court in *Bell Atlantic* stated that a statement of grounds on which a complaint rests "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1965. Rather, the Court now imposes a "plausibility" standard when judging the sufficiency of a complaint in the face of a motion to dismiss. *Id.* In this case, Plaintiffs cannot meet this plausibility standard and their Amended Complaint must be dismissed.

## ARGUMENT

**I. Plaintiff's retaliation claim under 42 U.S.C. § 1981 should be dismissed because Plaintiff fails to allege that the Defendant's custom or policy violated her rights and the claim is not based on race discrimination.**

In order to maintain a claim against the District under 42 U.S.C. § 1981, Plaintiff must allege and establish that a custom or policy of the Defendant was the moving force that caused her harm. *Jett v. Dallas Independent School District,* 491 U.S. 701, 710-737 (1989). Since Plaintiff has failed to make such allegations and indeed cannot prove that the Defendant's

custom or policy approved by one of the Defendant's policymakers was the cause of her alleged injuries, Count I should be dismissed and judgment entered for the District.

In 1987, when *Jett* was decided, 42 U. S. C. § 1981 provided that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and no other."

The statute did not provide for liability against the government. *Jett, supra*.

In *Jett*, however, the Supreme Court addressed two critical issues relating to municipal liability under §1981. In *Jett*, an employment discrimination case, a white teacher sued the principal and school district claiming that his termination from his coaching job was because of his race. Plaintiff brought suit under §§1981 and 1983. First, the Supreme Court held that §1983 was plaintiff's exclusive remedy for any alleged violations of his rights and under §1983 the school district could not be held liable under a theory of *respondeat superior*. *Jett*, 491 U.S. at 731. Second, and on point with the issues in the instant case, the Supreme Court held that the "custom and policy" analysis announced in *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978), applies to municipal liability under §1981. *Jett*, 491 U.S. at 731.

In 1991, the Civil Rights Act of 1991, §101 amended §1981 by adding two subsections, one of which was § 1981(c). This new subsection provides that "the rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law." 42 U.S.C. § 1981(c). Thus, the 1991 amendment to §1981 provided for direct liability against government entitles and reversed the Supreme Courts' holding in *Jett* as to this question only.

6

The amendment did not, however, effect the Supreme Court's holding as to the custom and policy required. *Powell v. City of Pittsfield,* 143 F. Supp. 2d 94, 110-114 (D.Mass. 2001). Since the 1991 amendment to §1981, courts have consistently applied the custom and policy analysis to §1981 claims against municipalities. *Medina v. District of Columbia* 2007 U.S. Dist. (Decided June 6, 2007) (Sullivan, J.) (custom and policy analysis applied to a violation of rights under §1981); *Taylor, et al. v. District of Columbia Water & Sewer Authority*, 241 F.R.D. 33, n5 (Decided March 13, 2007) ( Kennedy, J) (The requirement of a common policy applies to intentional discrimination under Section 1981); *Federation of African Am. Contractors*, *et al. v. City of Oakland, et al.,* 96 F.3d 1204, 1215 (Ninth Cir. 1996); *Johnakin v. City of Philadelphia*, 1996 U.S. Dist. LEXIS 445, No. Civ. A. 95-1588, 1996 WL 18821, at *4 (E.D. Pa. Jan. 18, 1996); *Gallardo v. Bd. Of County Comm'rs*, 857 F. Supp. 783, 786-87 (D. Kan. 1994); *see also Philippeaux v. N. Cent. Bronx Hosp.*, 871 F. Supp. 640, 654-56 (S.D.N.Y. 1994) (not resolving whether section 1981(c) overturns *Jett*'s first principal, but holding that "policy or custom" must yet be established). Thus, in order to maintain a claim against the District under §1981, Plaintiff must still allege and prove that her injuries were caused by a custom or policy approved by a District policymaker in accordance with *Monell, supra.*

As explained in *Monell*, the District can be held liable for Plaintiff's constitutional claims under 42 U.S.C. § 1983 only if the Plaintiff alleges facts that indicate her injury was caused by a policy or custom of the District. 436 U.S. 658, 694 (1978); *see also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824 (1985). To show that a municipal custom or policy caused a constitutional violation, Plaintiff must do more than identify conduct attributable to the municipality. *Board of County Comm'rs of Bryan County, Okl. v. Brown, 520 U.S. 397, 404*. Plaintiff must "show fault on the part of the city based on a course of action its policy-makers

7

consciously chose to pursue." *Carter v. Dist. of Columbia,* 254 U.S. App. D.C. 71, 795 F.2d 116, 122 (D.C. Cir. 1986). That conduct must be "the moving force of the constitutional violation." *Monell, 436 U.S. at 694*.

In *Baker v. District of Columbia,* the D.C. Circuit Court stated that Plaintiff can establish a municipal custom or policy by:

> the explicit setting of a policy by the government that violates the Constitution, the action of a policy maker within the government, the adoption through a knowing failure to act by a policy maker of actions by his subordinates that are so consistent that they have become 'custom,' or the failure of the government to respond to a need (for example, training of employees) in such a manner as to show 'deliberate indifference' to the risk that not addressing the need will result in constitutional violations.

326 F.3d 1302, 1306-07 (D.C. Cir. 2003). A policy maker, for the purposes of municipal liability is an official who has discretion to exercise particular functions assigned and to establish final government policy respecting activity. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 482-83; *see also Morgan v. Barry*, 785 F. Supp. 187, 194 (D.D.C. 1992) ("the authority to make policy that will give rise to municipal liability is final policy . . . . The District of Columbia can be held responsible under § 1983 for the eviction of the plaintiff if it was the product of a sanctioned policy ordered or allowed to exist by a municipal official with final policymaking authority in that area.").

In the District of Columbia, the Mayor and the Chief of Police are DCMPD's policymakers. The Mayor's authority over DCMPD is established by DC Code § 5-101.03 (2001 edition), which provides:

> It shall be the duty of the Mayor of the District of Columbia at all times of the day and night within the boundaries of Police District:
>
> (3) To protect the rights of persons and property . . . .

8

The Chief of Police's policymaking authority is found in District of Columbia Municipal Regulations. Title 6A, § 800.3 provides:

> The Chief of Police shall promulgate all orders, rules and regulations of the Mayor or Council which pertain to the work of the Metropolitan Police Department, and shall issue those instructions, and promulgate those orders, rules, and regulations, not inconsistent with the law or with the overall D.C. Government policy, as he or she may deem proper in the exercise of his or her functions as chief executive of the department.

In Plaintiff's Pretrial Statement and Complaint she neither alleges nor can she establish that the Defendant's custom or policy caused her alleged injury under 42 U.S.C. § 1981. *See* PS. at 1; Complaint ¶¶ 15-16. Moreover, there is no evidence to establish that the Mayor or the DCMPD Chief of Police set a policy that violated any of Plaintiff's constitutional rights. Plaintiff also does not allege or establish that the Mayor or the DCMPD Chief of Police was deliberately indifferent, which caused the alleged violation of her constitutional rights. Plaintiff merely alleges that DCMPD employees violated her rights under 42 U.S.C. § 1981. Thus, the Defendant's custom or policy was not the "moving force" behind the alleged violation of Plaintiff's constitutional rights. The Court, therefore, should dismiss Count I of Plaintiff's complaint because the Defendant cannot be held liable under a theory of respondeat superior for alleged unconstitutional acts of its employees. *Jett*, 491 U.S. at 731.

**II. Plaintiff's retaliation claim under 42 U.S.C. § 1981 should also be dismissed for all retaliatory acts occurring prior to August 31, 2002 because the 42 U.S.C. § 1981 claim as it pertains to such acts is time barred.**

In order to bring a claim under 42 U.S.C. § 1981 in the District of Columbia, an individual must file their complaint within three years of the alleged incident. *See Carney v. American Univ.*, 151 F.3d 1090, 1095 (D.C. Cir. 1998); *Welch v. Kelly*, 882 F. Supp. 177, 180 (D.D.C. 1995); *Saunders v. George Washington Univ.*, 768 F. Supp. 854, 868 (D.D.C. 1991).

9

Since plaintiff failed to file her complaint until August 31, 2005, Plaintiff's 42 U.S.C. § 1981 retaliation claim must be dismissed so far as it pertains to retaliatory acts that occurred prior to August 31, 2002.

42 U.S.C. § 1981 does not specifically provide which statute of limitations applies to 42 U.S.C. § 1981 claims brought in the District of Columbia. However, the D.C. Circuit ruled in *Macklin v. Spector Freight Systems, Inc.*, 478 F. 2d 979, 994 (D.C. Cir. 1973), that the District's three-year personal injury statute listed in D.C. Code § 12-301(8) applied to 42 U.S.C. § 1981 claims.[2] This ruling was called into question when the District of Columbia enacted the District of Columbia Human Rights Act of 1978 causing the jurisdiction to split on which statute of limitation applied to § 1981 claims.

The Supreme Court's ruling in *Wilson v. Garcia*, 471 U.S. 261 (1985), however, offered the D.C. Circuit guidance on which statute of limitation federal courts should use. In *Garcia*, the Supreme Court addressed which New Mexico statute of limitation to apply to a 42 U.S.C. § 1983 claim. The plaintiff in that case brought a civil rights action against the defendant under 42 U.S.C. § 1983 seeking monetary damages for injuries incurred after the police unlawfully arrested and beat him. The plaintiff filed the complaint two years and nine months after the alleged injury occurred. The defendant filed a motion to dismiss arguing that plaintiff's claim was time-barred by New Mexico's Tort Claims Act 2-year statute of limitations. The District Court dismissed defendant's complaint stating that New Mexico's 4-year statute of limitations

---

[2]  D.C. Code § 12-301(8) provides:
    Except as otherwise specifically provided by law, actions for the following purposes may not be brought after the expiration of the period specified below from the time the right to maintain the action accrues:
        (8) for which a limitation is not otherwise specially prescribed -- 3 years;

for claims applied instead. The Tenth Circuit affirmed, but held that New Mexico's statute providing a 3-year limitations period for personal injury actions applied.

In affirming the Tenth Circuit's ruling, the Supreme Court first analyzed 42 U.S.C. § 1988 to identify the correct source of law. The Court found that 42 U.S.C. § 1988(a) instructs federal courts to examine federal law to enforce the law of the United States; where federal law provides no answer, the federal courts are to consult the state laws only if the state law is not inconsistent with the laws of the United States.[3] *See Garcia*, 471 U.S. at 267. This principle of borrowing state law, the court opined "is fairly construed as a directive to select, in each State, the one most appropriate statute of limitations for all § 1988 claims." *Id.* at 275. One statute of limitations for all claims fosters interest of uniformity, certainty, and judicial economy. Multiple statute of limitations for difference 42 U.S.C. § 1983 would create a large amount of collateral litigation over which statute of limitation applied.

The court then concluded that adopting the statute of limitations for tort action for the recovery of damages for personal injuries is the best statute to adopt. *Id.* at 276. The court perused the historical context in which 42 U.S.C. § 1983 was created and determined that the remedies established in the Civil Rights Act were more analogous to tort claims for personal injury.

---

[3] 42 U.S.C. § 1988 provides:
> The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of titles 13, 24, and 70 of the Revised Statutes for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty.

The D.C. Circuit Court in *Banks v. Chesapeake*, 802 F. 2d 1416 (1986), followed the Supreme Court's analysis in *Garcia* in determining that courts in the D.C. Circuit should use the District of Columbia's personal injury statute of limitation for claims brought under 42 U.S.C. § 1981. The Court stated that 42 U.S.C. § 1981 is similar to 42 U.S.C. § 1983 for three reasons: (1) the borrowing principle that emanates from 42 U.S.C. § 1988 also applies to 42 U.S.C. § 1981; (2) 42 U.S.C. § 1981 like 42 U.S.C. § 1983 provides remedies for a broad range of actions that can be considered torts and a uniform statute of limitations for all 42 U.S.C. § 1981 would foster the interest of uniformity, certainty, and judicial economy; and (3) 42 U.S.C. § 1981 was also a product of the reconstruction era intended to broadly protect the rights of all United States Citizens. 802 F. 2d at 1421.

In dicta the D.C. Circuit stated that *Macklin* is still consistent with the Supreme Court's decision in *Garcia*. *Id.* at 1428. Courts since that decision have continued to apply the three-year statute. *See Carney v. American Univ.*, 151 F.3d 1090, 1095 (D.C. Cir. 1998); *Welch v. Kelly*, 882 F. Supp. 177, 180 (D.D.C. 1995); *Saunders v. George Washington Univ.*, 768 F. Supp. 854, 868 (D.D.C. 1991). Therefore, the personal-injury three-year statute of limitations still applies.

Here, Plaintiff brought a retaliation claim under 42 U.S.C. § 1981 on August 31, 2005. *See* Complaint ¶ 1. In Plaintiff's complaint, however, Plaintiff alleges acts of retaliation that occurred prior to August 31, 2002. *See* Complaint ¶¶ 2-6. Given the three year statute of limitations, however, Plaintiff is barred from bringing any claims based on retaliatory acts that occurred prior to August 31, 2002. Accordingly, Plaintiff's retaliation claim under 42 U.S.C. § 1981 should be dismissed as it pertains to retaliatory acts that occurred prior to August 31, 2002.

**III. Plaintiff's DCHRA claims should be dismissed for all acts occurring prior to August 31, 2004 because the DCHRA claims as they pertain to such acts are time barred.**

Plaintiff's claims under the District of Columbia Human Rights Act ("DCHRA"), D.C. Code § 2-1402.11, are time barred as they pertain to acts that occurred prior to August 31, 2004. Section 2-1402.11 of the DCHRA prohibits discriminatory conduct during employment by an employer, labor organization, or employment agency. To file a complaint under the DCHRA, an individual must file the complaint within one year of the alleged discriminatory act. D.C. Code § 2-1403.16 (2007). As mentioned above, Plaintiff filed her complaint on August 31, 2005. *See* Complaint ¶ 1. Therefore, all claims alleging discriminatory acts that occurred prior to August 31, 2004 are time barred and must be dismissed.

**IV. Plaintiff's DCHRA claims should be dismissed as they pertain to acts occurring prior to February 12, 2005 because Plaintiff failed to comply with the mandatory notice provision of D.C. Code § 12-309.**

Most of Plaintiff's DCHRA claims are barred by the mandatory notice provisions of D.C. Code § 12-309.[4] Pursuant to § 12-309:

> An action may not be maintained against the District of Columbia for unliquidated damages to person or property unless, within six months after the injury or damage was sustained, the claimant, his agent, or attorney has given notice in writing to the Mayor of the District of Columbia of the approximate time, place, cause, and circumstances of the injury or damage.

The requirement of compliance with the time limit specified in § 12-309 is strict, absolute, and unqualified. In *District of Columbia v. Dunmore*, the D.C. Court of Appeals held that § 12-309 must be construed narrowly against claimants, writing:

> Section 12-309 is not, and does not function as, a statute of limitations. Rather, it imposes a notice requirement on everyone with a tort claim against the District of Columbia, and compliance

---

[4] The District notes that a motion to dismiss, rather than a summary judgment motion, is the proper avenue to raise a D.C. Code § 12-309 notice challenge. *Candido v. District of Columbia*, 2007 U.S. Dist. LEXIS 45175 at 22 n. 9.

       with its terms is "mandatory as a prerequisite to filing suit against the District."

662 A.2d 1356, 1359 (D.C. 1995) (internal citations omitted).

    In this case, Plaintiff served the Mayor with notice of her intent to sue on August 12, 2005. Plaintiff's claims that arose prior to February 12, 2005 are barred by § 12-309 because they occurred over six months prior to Plaintiff giving her August 12, 2005, notice to the Mayor. *See* Exhibit 1. Thus, Plaintiff's claims regarding her transfer from the Fifth District to the Sixth District in September of 2001; her denial of training, a take home vehicle, and a parking space in Fall of 2001; and her removal from the supervision of the detectives at Sixth District in 2001 cannot be maintained and are barred by the mandatory notice statute. The court, therefore, should grant the District's motion to dismiss on all such claims relying on these facts.

    WHEREFORE, the District respectfully requests that the Court grant its motion to dismiss.


       Respectfully submitted,


       LINDA SINGER
       Attorney General for the District of Columbia

       GEORGE C. VALENTINE
       Deputy Attorney General,
       Civil Litigation Division

       */s/Phillip A. Lattimore*
       PHILLIP A. LATTIMORE, III [422968]
       Chief, General Litigation Sec. III

       */s/Nicola N. Grey*
NICOLA N. GREY [492150]
Assistant Attorney General
441 Fourth Street, N.W.
Sixth Floor South
Washington, D.C. 20001
(202) 724-6626; (202) 727-6295
(202) 727-3625 (fax)
E-mail:  nicola.grey@dc.gov